RUSSELL (SAXONVILLE MILLS v.). See Case No. 12,413.

RUSSELL (SCOTT v.). See Case No. 12,546.

RUSSELL (SPRING v.). See Case No. 13,-261.

## Case No. 12,162.

### RUSSELL v. THOMAS.

[10 N. B. R. 14; 10 Phila. 239; 31 Leg. Int. 189.] [1]

Circuit Court, E. D. Pennsylvania. Jan. 31, 1874.

CONSTITUTIONAL LAW — OFFICERS — APPOINTMENT BY PRESIDENT.

The provision of the act of March 2, 1867 [14 Stat. 543], entitled "An act supplementary to the several acts of congress abolishing imprisonment for debt," authorizing such proceeding to be had before a United States commissioner appointed by the president alone, without the consent of the senate, does not violate the constitutional provision vesting the judicial power of the United States in officers appointed by the president with the consent of the senate. Const. U. S. art. 2, § 2.

To the Honorable the Judges of the said Court: Craig Biddle, a commissioner duly appointed by your Hon. Court to take bail and affidavits, respectfully represents: That one John L. Thomas, on the 20th day of October, A. D. 1873, presented to him a petition, alleging that he was held in custody by the marshal of this district, by virtue of a capias ad

satisfaciendum issuing out of your Hon. Court, to collect a debt of $935.38, and asking that he be discharged from said custody, on giving bond to comply with the provisions of the act of congress approved March 2d, 1867, entitled "An act supplementary to the several acts of congress, abolishing imprisonment for debt." The said petition was granted, and a bond given to the plaintiff in the suit by the petitioner, for his appearance before your commissioner to apply for his discharge under the provisions of the insolvent laws of the state of Pennsylvania. In accordance with the condition of his said bond, the petitioner presented himself on January 19th, 1874, at eleven a. m., before your commissioner, accompanied by his counsel, Mr. Sellers; filed proof of the publication of the notice required, and asked that the final hearing be proceeded with.

Mr. Sharpless, for W. D. Russell, the plaintiff, on whose execution the petitioner was in custody at the time of the filing of the original petition, moved the commissioner to decline to take further jurisdiction in the case, on the ground that the act of congress already referred to, is unconstitutional and void in this, that it attempts to confer the judicial power of the United States, upon a judicial officer holding his office by other tenure than that of good behaviour.

Mr. Sellers requests, in view of this objection, that the further hearing of the case be postponed until Monday, February 2d, 1874, at eleven a. m., and that the proceedings be reported to the circuit court, for such instructions as they may deem meet.

Your commissioner, therefore, in accordance with said request, hereby submits the question to your honorable court for its decision thereon. All of which is respectfully submitted by your commissioner.

January 20th, 1874.          Craig Biddle.

BY THE COURT. Capias ad satisfaciendum. On defendant's petition for liberation and commissioner's report thereon. The question certified arises upon the concluding words of the act of congress of 2d March, 1867, supplementary to the several former acts abolishing imprisonment for debt. The former acts to be considered, are not only those of 28th February, 1839 [5 Stat. 321], and 14th January, 1841 [5 Stat. 321, 410], "to abolish imprisonment for debt in certain cases," but also those of 6th January, 1800, and 7th January, 1824, "for the relief of persons imprisoned for debt." The acts of 1800 [2 Stat. 4] and 1824 [4 Stat. 1] made certain functions exercisable by commissioners of insolvency specially appointed for each case in which relief might be affordable. The intervening acts of 1839 and 1841, contain no such express provision. But their execution might have required the occasional intervention of such specially appointed commissioners. The words in question at foot of the supplementary act of 1867, are, "But all such proceedings shall be had before some one of the commissioners appointed by the

[1] [Reprinted from 10 N. B. R. 14, by permission.]

United States circuit court to take bail and affidavits." The objection certified, assuming that these words confer an independent judicial function upon such a commissioner, is that congress cannot constitutionally make such a function exercisable by any officer who is not appointed by the president with the consent of the senate. If the objection would otherwise prevail, the assumed construction of the words must, for that very reason, be rejected, and they must be understood as having a constitutional meaning and application. They might then reasonably be understood as importing that wherever proceedings before a commissioner, under this supplementary act of 1867, or any former act, should thereafter be necessary or otherwise proper, they should be had before one of the standing commissioners. Legislative precedents for such an enactment might be mentioned. One of them occurred under the bankrupt law of 1800 [2 Stat. 19]. By that act (section 2) commissioners of bankruptcy had been specially appointable, for every case, by the judge. The act of 29th of April, 1802, to amend the judicial system, (section 14 [2 Stat. 164]), substituted general commissioners appointable by the president, without requiring any consent of the senate. It may be suggested that if such were the true and only application of the words in question, the present proceedings ought to have been commenced by a petition to the court or to the judge; and that the reference to one of the standing commissioners, if proper, ought to have followed. In future, this will probably be considered the more convenient course in ordinary cases. The present certificate of the commissioners having been made at the debtor's instance, may be so acted upon by the court as to be of equivalent effect to an initial petition, and a reference under it.

But there may perhaps be extraordinary cases in which the exclusion of a standing commissioner's initial cognizance of the application for relief, would prevent seasonable liberation of a prisoner. We may, therefore, consider whether the constitutional question which has been suggested could then properly arise. That congress may vest the appointment of such an inferior judicial officer as the commissioner in the president alone, or in the court alone, is, under the second section of the second article of the constitution, indisputable, and is not here disputed. The objection is, that the function here in question, is an independent one beyond the pale of an inferior officer's authority. But it is observable that the function is merely incidental to the execution of final judicial process. It is not necessary, however, to inquire whether congress should make such a function exercisable independently of revision by the tribunal which issues the process, because under these acts of congress, the commissioner's proceedings are, at every stage of them, amenable to such revision. His relation of a subordinate or inferior judicial func-

tionary, if he proceeds without special preliminary authorization, may perhaps, warrant summary revision by the court on affidavit, showing that his proceedings are unwarranted or irregular. If this be otherwise it follows that there may be revision through process of habeas corpus, or certiorari, if not by both.

The jurisdiction of the court having already attached under the judgment and execution, the power to issue revisory and auxiliary process by habeas corpus or certiorari, is conferred by the 14th section of the judiciary act of 24th of September, 1789 [1 Stat. 81]. This enactment expressly names the former of these writs; and the latter is included in the words, "all other writs not specially provided for by statute which may be necessary for the exercise of" the "respective jurisdictions and agreeable to the principles and usages of law." The point, as to a certiorari to enforce revision, has been considered in another circuit; and has, in principle, been decided by the supreme court in the case of a mandamus. The circuit court has no original jurisdiction to issue a mandamus, and it is not named in the 14th section. But the decisions are, that it is, nevertheless, one of those other writs, which, in aid and furtherance of an execution, may under that section, be issued by the circuit court. In the present case, it will suffice to make an order directing the commissioner to proceed in like manner as if the petition had been presented in the first instance to the court, and had been afterwards referred to him for provisional action, subject to exception, &c.; provided that the petitioner's right of liberation, and every incidental, and other question shall be open to consideration, and that either party may apply to the court for directions. &c. The nature of this proceeding would be misconceived if it were understood as affecting any other party than the execution creditor, or as depriving him of any recourse against the debtor, except that of imprisonment. No federal court can interfere with any independent process of a state court. Nor can a state court interfere with the execution of judicial or other process of a federal court. A discharge by the insolvent court of a state, therefore, has no force or effect of its own to liberate the insolvent from custody, under mesne or judicial process of this court against his body. But under acts of congress, ordinarily called the "Process Acts," which have not been as yet cited, a rule or practice of a court of the United States that "under neither mesne, nor final process, shall any individual be kept in prison who under the insolvent law of the state, has for such demand, been released from imprisonment," was held valid. This was not generally understood until the decision of Beers v. Houghton, 9 Pet. [34 U. S.] 329, in the year 1835. Such a rule or practice was afterwards adopted in the courts of the United States in most of the judicial districts, including those of Penn-

sylvania; and it was the purpose of some of the subsequent acts of congress which have been cited to facilitate such discharge from imprisonment. It thus became the practice in this court to discharge a prisoner, as in the state courts, on his giving a bond with the usual condition to take the benefit of the insolvent law of the state at the next term, &c. This insolvent law of the state authorizes the discharge of an insolvent debtor, on different conditions, in three different cases; the first where he is arrested or detained under process in any civil suit or proceeding for the recovery of money or damages, or for the non-performance of any decree or sentence for the payment of money; the second, where he is held on a bail-piece; the third where he is not arrested, detained, or held in custody in any manner. A person arrested or detained in a civil suit, under mesne or final process of this court, or under a bail-piece issued in any suit in this court, cannot obtain his liberation from such custody by a proceeding of either the first or the second kind in a state court of insolvency. Nor in a proceeding of the third kind, will the state courts have cognizance of any ulterior purpose of such a party to make the discharge when obtained, available for his liberation in this court. The present petitioner is reported to have proceeded in the insolvent court of the state to obtain, not a general discharge in the third of these modes, but a special discharge from the process of this court in the first mode. Of course he failed to induce the exercise of such a jurisdiction. In re Thomas [10 Phila. 82].

Whether his present application is rightly conceived, and if not whether the mistake will prevent him from obtaining relief under a simpler view of the legislation of congress which may be applicable, are questions for preliminary consideration and provisional decision by the commissioner. One of the questions may possibly be whether the provision of the law of the state that a prisoner, such as this defendant, who was in custody under process upon a judgment in any action for deceit, shall not be discharged until after an actual confinement of sixty days, qualifies the right of liberation which would otherwise be available to him under the acts of congress of 1800 and 1824. If the right is thus qualified, it must be through the effect of the acts of 1839, 1841 and 1867. These laws were enacted in the spirit of decision of Beers v. Houghton, with a general purpose to enlarge exemption and facilitate discharge from imprisonment. It is true, that in extending the relief to the full extent of that affordable under the laws of the respective states, these acts of congress require observance of the respective state laws, and expressly provide that all existing modifications, conditions and restrictions upon imprisonment for debt under the laws of any state, shall be applicable to process of the courts of the United States therein, &c. But

the question to be considered will be, whether these requirements and conditions are not limited to the cases in which this adoption of state laws by congress gave exemption or relief not otherwise obtainable under any positive law of the United States; and, therefore, whether the positive enactments of 1800 and 1824 in favor of personal liberty, are impliedly repealed or qualified by the subsequent statutes. I do not mean to intimate any present opinion as to their operation in these respects.

The act of 1867 was passed on the same day as the present bankrupt law. The insolvent laws of the several states variously differ from one another, and provisions of some of them could not co-exist with the bankrupt law. But I do not perceive that the act in question is interpretable, in anywise, with reference to the bankrupt law. Nor do I perceive any important bearing, positive or negative, of any of the provisions of the 5th, 6th or 14th sections of the act of June 1, 1872 [17 Stat. 196], "to further the administration of justice," though the general purpose of its 5th section is to promote conformity in the practice and modes of proceeding in the state and the federal courts. But here again what I suggest will not preclude further argument. I make the suggestions because their subjects were more or less fully argued on the application of the execution creditor for a writ of prohibition to the commissioner, and because they serve to explain my reasons for not granting that writ.